UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 13-61247-CIV-MARRA

YULANDA GRIFFITHS,

    Plaintiff,

vs.

DONOVAN L. PARKER d/b/a LAW
OFFICES OF DONOVAN L. PARKER,
and DONOVAN L. PARKER, individually,

    Defendant.

_____/

## OPINION AND ORDER

This cause comes before the Court upon Plaintiff's Motion for Partial Summary Judgment (DE 14).  Defendant responded (DE 17), and Plaintiff replied (DE 18).  The Court has considered the parties' arguments and is otherwise advised in the premises.  For the reasons expressed below, Plaintiff's Motion for Partial Summary Judgment (DE 14) is **GRANTED IN PART and DENIED IN PART**.

## I. Background

The following few facts are not in dispute.  Donovan Parker is a lawyer and operates his own practice.  Plaintiff Yulanda Griffiths performed secretarial duties for the law office of Donovan Parker from approximately March to June or July of 2012.  Parker Dep., p. 14 (DE 14-2).  Plaintiff answered the phone and was responsible for creating a Facebook page for the law practice.  *Id.*, pp. 36-39, 66-67.  Defendants did not pay any money to Plaintiff with the exception of giving her $50 once to cover Plaintiff's telephone bill, and a loan of $1,000 to cover burial expenses when Plaintiff's father passed away.  *Id.*, pp. 55-56, 98.  However, for a period of time Plaintiff resided in the back room of the office, which was located in a house, without paying rent.

Donovan Parker asserts that he allowed a friend, Delroy Edwards, to live in the back room

of the office, and that because Plaintiff was Delroy Edwards' girlfriend she resided there as well. *Id.*, pp. 42-43. Plaintiff and Delroy Edwards moved in in January, 2012. Id., pp. 14.

Donovan Parker contends that Plaintiff and her boyfriend were homeless at the time, and that Donovan Parker was helping them out to get back on their feet. *Id.*, pp. 42-43. Then, Delroy Edwards approached Donovan Parker and asked if Plaintiff could help out in the office since they were living rent-free. *Id.*, pp. 49-50. Further, Donovan Parker states that he and Plaintiff "had an understanding" that Plaintiff would enroll in a paralegal course at the Broward Community College. *Id.*, pp. 50-53, 74. Thus, in an effort to help Plaintiff, Donovan Parker hired her to intern for the law office "for a few hours in the mornings" when he went to court. *Id.*, pp. 29, 50-53, 74. In April or May Plaintiff and her boyfriend had a falling out, and Plaintiff moved out. *Id.*, p. 84. However, she continued to come to work at the office. *Id.* Eventually, in June or July Donovan Parker fired Plaintiff for excessive use of the internet. *Id.*, pp. 14-15; Pl.'s Ex. 10 (DE 14-11).

Plaintiff contends that she was an employee entitled to compensation. Defendants, however, argue that Plaintiff was a volunteer unpaid intern. Plaintiff seeks overtime compensation (Count I) and payment of the minimum wages (Count II) as well as fees and costs under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and brings a claim for unjust enrichment (Count III). (DE 1). Defendants countersued for unjust enrichment. (DE 7). In the Motion under consideration, Plaintiff contends that she is subject to individual coverage, that Defendant Donovan Parker is an individual employer, that Plaintiff did not qualify as a voluntary unpaid intern, and that she is entitled to liquidated damages under the FLSA. Plaintiff seeks a partial summary judgment on these issues and on Defendants' counterclaim.

## II. Legal standard for summary judgment

The Court may grant summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson*, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the

3

non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249–50 (internal citations omitted).

### III. Discussion

**1. Plaintiff's individual coverage under the FLSA**

Plaintiff argues that she is subject to individual coverage under the FLSA. However, the Court finds that a genuine issue of material fact remains in this respect.

The minimum-wage provisions of the FLSA cover (1) enterprises "engaged in commerce or in the production of goods for commerce," and (2) employees who themselves are "engaged in commerce or in production of goods for commerce." *See* 29 U.S.C. § 206(a)(1); 207(a)(2); *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011). For an employee to be individually "engaged in commerce" under the FLSA, she "must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, *e.g.*, transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in [her] work, *e.g.*, regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006); *see also* 29 C.F.R. § 776.10 ("Also, since 'commerce' as used in the Act includes not only 'transmission' of communications but 'communication' itself, employees whose work involves the continued use of the interstate mails, telegraph, telephone or similar instrumentalities for communication across State lines are covered by the Act. This does not mean that any use by an employee of the mails and other channels of communication is sufficient to establish coverage. But if the employee, as a regular and recurrent part of his duties, uses such instrumentalities in obtaining or communicating information or in sending or receiving written reports or messages, or orders for goods or services, or plans or other documents across State lines,

4

he comes within the scope of the Act as an employee directly engaged in the work of 'communication' between the State and places outside the State"); 29 C.F.R. § 776.23 ("[E]mployees who regularly use instrumentalities of commerce, such as the telephone, telegraph and mails for interstate communication are within the scope of the Act" discussing employment in the construction industry). The character of the employee's activities rather than the nature of the employer's business is determinative of the issue of individual coverage. *See Overstreet v. N. Shore Corp.*, 318 U.S. 125, 130 (1943); *Jacobs v. Dolanlil, Inc.*, 608-CV-02071ORL22GJK, 2010 WL 1730807 (M.D. Fla. Apr. 12, 2010) report and recommendation adopted, 608-CV-2071-ORL22GJK, 2010 WL 1730805 (M.D. Fla. Apr. 27, 2010).

>Here, Plaintiff filed an affidavit stating:
>
>12. My job responsibilities included regularly placing and receiving calls to and from Mr. Parker's clients both within and outside of Florida, scheduling appointments, preparing and receiving correspondence to and from clients and the courts through the mail, filing, collecting payments, and dealing with clients who came into the office.
>13. The majority of my time was spent placing and receiving telephone calls. During my employment, I regularly spoke with Defendants' clients in other states, including Texas and New York. I spoke with these clients on at least a weekly basis, and at times on a daily basis. One such client in particular was Tracy Williams in Texas.
>14. I also sent and received mail to and from clients in New York and Texas on at least a weekly basis.
>15. Another job responsibility that I fulfilled was to use the internet to create a Facebook page for Defendants. This was done in order to generate business for the law firm.

Decl. of Yulanda Griffiths (DE 15-1).

There is a dispute as to the use of the mail because Donovan Parker said in his deposition that he prepared all his mail and affixed the stamps. Parker Dep., p. 37 (DE 14-2). Also, there is no indication that Plaintiff's duty to create a Facebook page for the law office involved any regular activity. However, it is undisputed that Plaintiff answered the phone on a daily basis. *Id.*, pp. 36-39,

5

66-67.

Neither side provides any records with respect to interstate communications. *Cf. Curry v. High Springs Family Practice & Diagnosis Ctr., Inc.*, 1:08CV00008-MP-AK, 2009 WL 3163221 (N.D. Fla. 2009) (finding that telephone records proved that plaintiff's contact with out-of-state insurers was sporadic rather than regular and granting summary judgment in favor of the defendant). Defendants state that "Plaintiff never communicated with any [. . .] clients in New York or Texas by telephone," and that Tracy Williams was not a client.[1]  Although Plaintiff provided a copy of the docket sheet showing that during the relevant period of time Donovan Parker appeared as counsel of record for a prisoner incarcerated in New Hampshire (DE 14-7), the Court concludes that there is a genuine issue of material fact with respect to whether Plaintiff is subject to individual coverage under the FLSA.

**2. Donovan Parker's status as an individual employer under the FLSA**

The Court finds that the undisputed facts establish that Defendant Donovan Parker was Plaintiff's "employer," as this term is defined under the FLSA. The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  The Court may look to several factors to determine whether the defendant is an "employer," including "whether the alleged employer (1) had the power to hire and fire the

---

[1] These statements are made in Defendants' Statement of Material Facts (DE 17-1) rather than in a sworn affidavit. Plaintiff argues that Defendants' brief and the Statement of Material Facts should be stricken as untimely and non-compliant with the Local Rules. However, there is a general preference for deciding issues on the merits. *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985). Thus, the Court considers Defendants' arguments and the Statement of Material Facts.
   Plaintiff further objects to Defendant Donovan Parker's statement that Plaintiff did not communicate with any clients in New York or Texas by telephone because in his deposition Donovan Parker acknowledged that he generally was out of the office when Plaintiff answered the phones. Plaintiff therefore argues that Donovan Parker lacks personal knowledge of this matter. However, observing Plaintiff while she was answering the telephone is not the only way to gain personal knowledge of the location of the clients who communicated with Plaintiff telephonically. Therefore, the Court will consider this information.

employees, (2) supervised and controlled the employees' work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Villarreal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997). "To be personally liable, [the defendant] must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986).

Here, the evidence establishes that Defendant Donovan Parker was in charge of all operations of the law firm, and that besides him and Plaintiff no other persons worked in the office. Parker Dep., pp. 12-13, 47. Thus, Defendant Donovan Parker meets the standard for individual-employer liability set forth by the Eleventh Circuit in *Villarreal* and *Patel*.

**3. Plaintiff's status**

In order to be entitled to minimum wage and overtime compensation Plaintiff must have been an "employee" of the Defendants. *See* 29 U.S.C.A. §§ 206(a), 207(a)(1) (West). Plaintiff is seeking this Court's determination that she was an "employee" under the FLSA. The Court finds that a genuine issue of material fact remains with respect to Plaintiff's status.

The FLSA defines "employee" as "any individual employed by an employer." 29 U.S.C.A. § 203(e)(1) (West). In turn, "'[e]mploy' includes to suffer or permit to work." 29 U.S.C.A. § 203(g) (West). In a recent opinion discussing the status of student trainees, the Eleventh Circuit has stated that:

> In determining whether an employer-employee relationship exists under the FLSA, we must consider the "economic realities" of the relationship, including whether a person's work confers an economic benefit on the entity for whom they are working. *See Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 470 (11th Cir.1982). But, when a person works for his own advantage or personal purpose—particularly when his work provides no "immediate advantage" for his alleged "employer"—he is not an "employee" under the FLSA. *See Walling v. Portland Terminal Co.*, 330 U.S. 148, 67 S.Ct. 639, 641–42, 91 L.Ed. 809 (1947) (explaining that the FLSA's broad definition of "employee" "cannot be interpreted so as to make a person whose work

> serves only his own interest an employee of another person who gives him aid and instruction.").

*Kaplan v. Code Blue Billing & Coding, Inc.*, 504 F. App'x 831, 834 (11th Cir. 2013) cert. denied, 134 S. Ct. 618 (2013).  Moreover, the six-factor test developed by the Wage and Hour Administrator of the United States Department of Labor in light of the Supreme Court's decision in *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947) is instructive in determining whether a trainee qualifies as an "employee" under *Portland Terminal*.  *Kaplan*, 504 F. App'x at 834.

> Under the Administrator's test, a trainee is not an "employee" if these six factors apply:
> (1) the training, even though it includes actual operation of the facilities of the employer, is similar to that which would be given in a vocational school;
> (2) the training is for the benefit of the trainees;
> (3) the trainees do not displace regular employees, but work under close supervision;
> (4) the employer that provides the training derives no immediate advantage from the activities of the trainees and on occasion his operations may actually be impeded;
> (5) the trainees are not necessarily entitled to a job at the completion of the training period; and,
> (6) the employer and the trainees understand that the trainees are not entitled to wages for the time spent in training.

*Id.*

Here, undisputed testimony establishes that Donovan Parker began practicing law in 2002 and has always been a solo practitioner.  Parker Dep., pp. 21-29 (DE 14-2).  Between 2002 and 2009 he employed Mr. Ashley Gayle to provide "general help," including secretarial duties.  *Id.*  Also, between 2003 and 2009 Donovan Parker employed Ms. Diane Grant part-time as a paralegal and paid her a little more than $8 per hour.  *Id.*  Ms. Grant left to go to law school. *Id.*  Between 2010 and 2012 Ms. Janice Jacobs worked at Donovan Parker's office as an unpaid volunteer intern performing secretarial duties part-time.  *Id.*  Ms. Jacobs had a college degree in legal assisting and wanted experience.  *Id.*  Donovan Parker did not pay her a salary, but reimbursed her for gas.  *Id.*  Ms. Jacobs left in January of 2012, and Donovan Parker was functioning well afterwards without

help. *Id.*, pp. 50-51. However, in March of 2012 Delroy Edwards suggested that Plaintiff could help Donovan Parker in the office, and Donovan Parker agreed in an effort to help Plaintiff to get on her feet and acquire a degree or certification in paralegal studies. *Id.* Donovan Parker states that he told Plaintiff that he would not be paying for the work. *Id.*, p. 29. Plaintiff, on the other hand, asserts that she was promised $15 per hour. Decl. of Yulanda Griffiths, ¶ 3 (DE 15-1). Donovan Parker gave Plaintiff some training, but Plaintiff was not supervised when Donovan Parker went to court in the mornings. Parker Dep., pp. 32, 74-76. Donovan Parker testified in his deposition that he wanted to help Plaintiff with her pursuit of a paralegal degree or certification, but that he knew that Plaintiff never enrolled in such a program. *Id.*, p. 50.

Overall, there is a genuine issue of material fact with respect to at least three factors. First, there is a dispute as to whether the training was for the benefit of the trainee or the employer. Donovan Parker states that he was functioning well without help, and that he hired Plaintiff as an intern to help her acquire a certification or a degree in paralegal studies. *Id.*, pp. 50-53, 74. In contrast, Plaintiff stresses that she was never enrolled in any program, and Donovan Parker does not dispute that he knew that Plaintiff never enrolled, *see id.* Also, when Plaintiff did not perform well in taking dictation Donovan Parker took this responsibility away from her rather than persisted with training. *Id.*, pp. 77-78.

Second, it is unclear whether Plaintiff displaced an employee. The jury may interpret the fact that most of the time Donovan Parker had at least part-time help in the office to mean that Plaintiff indeed displaced an employee. Also, Plaintiff worked unsupervised when Donovan Parker was in court, which made her position similar to employment.[2] On the other hand, the trier of fact may

---

[2] Plaintiff asserts that she worked forty or more hours per week. Donovan Parker, however, states that Plaintiff only worked a few hours in the mornings covering the phones when he was in court. Thus, if Defendants' position is accepted as true for the purposes of the motion for summary judgment, Plaintiff was unsupervised most of the time.

believe that Plaintiff did not displace an employee because Ms. Jacobs, who preceded Plaintiff, was not paid a salary, and because Donovan Parker states that he was functioning well without help.

Lastly, it is important that there is conflicting evidence with respect to the parties' understanding whether Plaintiff's work would be compensated. Accordingly, a genuine issue of material fact remains as to whether Plaintiff qualified as an employee. Because summary judgment is not appropriate on this issue, the Court need not decide now whether Plaintiff is entitled to liquidated damages.

### 4. Counterclaim for unjust enrichment

Under Florida law, a plaintiff must establish four elements to recover for unjust enrichment. *Merle Wood & Associates, Inc. v. Trinity Yachts, LLC*, 714 F.3d 1234, 1237 (11th Cir. 2013). "First, the plaintiff must have conferred a benefit on the defendant. Second, the defendant must have knowledge of the benefit. Third, the defendant must have accepted or retained the benefit conferred. Fourth, the circumstances must be such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Id.* (internal citations and quotations omitted).

In this case, Defendants may be able to establish all elements of unjust enrichment because it is undisputed that Plaintiff lived at the law office for a period of several months. Thus, the jury may find that Defendants conferred a benefit on Plaintiff which Plaintiff accepted, and that it may be inequitable for Plaintiff to not compensate Defendants.

### IV. Conclusion

Accordingly,  Plaintiff's Motion for Partial Summary Judgement (DE 14) is **GRANTED IN**

PART and DENIED IN PART.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 19th day of May, 2014.

_____
KENNETH A. MARRA
United States District Judge